656 F.2d 791
 211 U.S.App.D.C. 202
 GENERAL MOTORS CORPORATION, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Associated Natural Gas Company, Lyons Gas Company, Madison
Gas and Electric Company, Michigan Power Company, Public
Service Commission of Wisconsin, City Gas Company, Wisconsin
Fuel and Light Company, Wisconsin Gas Company, Wisconsin
Public Service Corporation, Wisconsin Power and Light
Company, Wisconsin Natural Gas Company, Michigan Wisconsin
Pipe Line Company, Iowa Southern Utilities Company, and
North Central Public Service Company, Intervenors.
 No. 80-1776.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued May 6, 1981.
Decided June 10, 1981.
 
 Richard P. Noland, Washington, D. C., with whom Robert W. Clark, III, William H. Penniman, Francine E. Schulberg, and Julius Jay Hollis, Washington, D. C., were on the brief, for petitioner. Edward J. Grenier, Jr. and Richard A. Oliver, Washington, D. C., entered appearances for petitioner.
 Joel M. Cockrell, Atty., Federal Energy Regulatory Commission, Washington, D. C., with whom Robert R. Nordhaus, Gen. Counsel, and Jerome Nelson, Solicitor Federal Energy Regulatory Commission, Washington, D. C., were on the brief, for respondent. Kristina Nygaard, Atty., Federal Energy Regulatory Commission, Washington, D. C., entered appearance for respondent.
 
 
 1
 William W. Brackett, Washington, D. C., with whom Daniel F. Collins and Terry O. Vogel, Washington, D. C., were on the brief, for intervenor Michigan Wisconsin Pipe Line Co.
 
 
 2
 Bruce F. Kiely, Washington, D. C., with whom David C. Mebane, Madison, Wis., and Stephen Teichler, Robert A. Nuernberg, and Steven R. Hunsicker, Washington, D. C., were on the brief, for intervenors Wisconsin Gas Co., Madison Gas and Electric Co., City Gas Co., and all Wisconsin gas distributors.
 
 
 3
 Ned Willis, Perry, Iowa, was on the brief for intervenors Iowa Southern Utilities Co. and North Central Public Service Co.
 
 
 4
 Steven M. Schur, Madison, Wis., and Philip J. Mause, Norman A. Pedersen, and Lawrence A. Levey, Washington, D. C., were on the brief for intervenor Public Service Commission of Wisconsin.
 
 
 5
 John J. Cassidy, Chicago, Ill., for intervenor Michigan Power Co.
 
 
 6
 Richard M. Merriman, Washington, D. C., for intervenors Associated Natural Gas Co. and Lyons Gas Co.
 
 
 7
 Before WRIGHT, MIKVA and GINSBURG, Circuit Judges.
 
 
 8
 Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.
 
 J. SKELLY WRIGHT, Circuit Judge:
 
 9
 The issue presented in this petition for review is whether the Federal Energy Regulatory Commission (FERC) has offered sufficient justification for failing to hold an evidentiary hearing, upon the request of General Motors Corporation (GM), prior to granting Michigan Wisconsin Pipe Line Company (Michigan Wisconsin) a certificate of public convenience and necessity authorizing Michigan Wisconsin to construct additional pipeline facilities and to deliver increased amounts of natural gas to some of its customers on "peak" demand days. We conclude that the Commission did not adequately explain its denial of GM's hearing request. Accordingly, we remand the case to the Commission for reconsideration and the opportunity to provide further explanation.
 
 
 10
 * Michigan Wisconsin is a natural gas company regulated by FERC. The company sells natural gas to various wholesale distribution customers (distributors), which in turn sell natural gas to end users. The volume of natural gas that distributors may purchase from Michigan Wisconsin, under contract, is subject to two important limitations approved by FERC. First, the amount of natural gas a distributor may purchase in the course of a year is limited to the distributor's "annual entitlement." Second, the amount of gas that may be purchased on any one day cannot exceed the "peak day entitlement" for the distributor.
 
 
 11
 This case involves an increase in peak day entitlements. On April 30, 1979 Michigan Wisconsin filed an application with FERC, pursuant to Section 7(c) of the Natural Gas Act, 15 U.S.C. § 717f(c) (1976), for a certificate of public convenience and necessity authorizing Michigan Wisconsin to increase peak day entitlements for 20 of its distribution customers and also to construct additional pipeline facilities necessary for increased deliveries. In explaining its request Michigan Wisconsin noted that "(b)ecause of conservation efforts * * * and the shifting of some industrial loads to alternate fuels," some of its distribution customers were "unable to utilize fully the annual gas supplies available to them under their service agreements with Michigan Wisconsin."[1] Such underutilization of annual entitlements would be rectified, Michigan Wisconsin suggested, if the distributors were permitted to purchase increased volumes of gas on peak demand days. A 1.1 percent increase in peak day entitlements for these distributors, without any concomitant increase in annual entitlements, would allow them "to serve new residential hook-ups and other high priority consumers desiring to switch from fuel oil to gas."[2]
 
 
 12
 In response to Michigan Wisconsin's application GM, which purchases gas from several distribution customers of Michigan Wisconsin for which no increases in peak day entitlements were sought, moved to intervene in the proceedings and requested a formal evidentiary hearing on several issues. On November 1, 1979 the Commission issued an order in which it allowed GM to intervene, but denied the company's request for an evidentiary hearing and granted Michigan Wisconsin the certificate of public convenience and necessity it sought.[3] GM then petitioned for rehearing, arguing again that the Commission must hold an evidentiary hearing. On May 14, 1980 the Commission issued an "Order Denying Rehearing," in which it attempted to clarify further its decision to dispense with an evidentiary hearing.[4] Shortly thereafter GM filed this petition for review of the Commission's two orders, in which it challenges the Commission's refusal to conduct an evidentiary hearing.
 
 II
 
 13
 The principal claim GM makes in this petition for review is that the Commission, in violation of the Natural Gas Act and its governing regulations,[5] failed to hold a formal evidentiary hearing on the issue of whether Michigan Wisconsin's "supply situation over both the short and long terms is adequate to permit the proposed increase in peak day service."[6] GM concedes that FERC need not hold an evidentiary hearing when no issue of material fact is in dispute.[7] But in GM's view, the issue of Michigan Wisconsin's supply situation over the short term and long term presents an issue of material fact that requires an evidentiary hearing.
 
 
 14
 As we read the Commission's orders, FERC offered two reasons[8] for refusing to hold an evidentiary hearing on the issue of Michigan Wisconsin's supply situation.[9] First, the Commission suggested that where, as here, the gas company's application involves only an increase in peak day entitlements, and no change in annual entitlements, FERC need not conduct an evidentiary hearing concerning the applicant's supply situation. In such circumstances the necessary showing concerning the applicant's supply situation was made when the Commission previously approved the annual entitlements.[10] Second, FERC indicated that an evidentiary hearing on Michigan Wisconsin's supply situation was unnecessary because Michigan Wisconsin had not recently curtailed any of its customers and did not expect curtailment during the coming year.[11] In our view, the Commission's reasons, as presently stated, fail to justify a denial of an evidentiary hearing concerning the adequacy of Michigan Wisconsin's long-term supply situation.[12]
 
 A.
 
 15
 The Commission's first ground for denying GM's hearing request that Michigan Wisconsin did not seek an increase in annual entitlements not only trivializes the Commission's decision to increase peak day entitlements; it attributes continuing validity to earlier adequacy-of-supply showings. The Commission, in holding that adequacy-of-supply hearings are unnecessary where annual entitlements remain unaltered, seems to assume that the validity of the previous adequacy-of-supply showings continues uneroded by the passage of time. But in this case all of the current annual entitlements for Michigan Wisconsin's distribution customers were certificated by FERC no later than 1975.[13] While Michigan Wisconsin's supply situation may have been adequate then to support the Commission's approval of the annual entitlements, it is not clear that if the Commission were to reconsider those annual entitlements today, based on Michigan Wisconsin's present and future supply situation as currently perceived, it would necessarily find them to be reasonable.[14]
 
 
 16
 What makes the Commission's justification even more troubling is that in 1977 the Commission's predecessor, the Federal Power Commission, denied, after evidentiary hearing, Michigan Wisconsin's application seeking an increase in peak day entitlements but no increase in annual entitlements. As the Federal Power Commission then noted:
 
 
 17
 We agree with the Staff, the Judge, and General Motors that this application should be denied. As the Administrative Law Judge points out, the gas supplies of Michigan Wisconsin are declining sharply. In this time of gas shortages it is inappropriate and contrary to the public interest to allow the attachment of new high priority customers where there are alternative means available to those new customers and where the Commission may feasibly take action to limit the growth of these distributors through its transportation jurisdiction. The Commission would not be pursuing its mandate under the Natural Gas Act were it to continue to permit the addition of new customers on this record. There is simply no rational basis to encourage new consumers. * * *
 
 
 18
 Michigan Wisconsin Pipe Line Co., Federal Power Commission Opinion No. 810 (July 7, 1977), at 23-24 (emphasis added). In other words, despite the previous adequacy-of-supply showings that demonstrated Michigan Wisconsin's ability to supply the volumes of natural gas specified in its annual ceilings, the Commission refused to approve an increase in peak day entitlements not exceeding those annual ceilings, on the ground that Michigan Wisconsin's supply situation was inadequate. Without further explication the Commission's action in Opinion 810 must be read as casting doubt on the continuing validity of the prior adequacy-of-supply showings that supported the annual ceilings.
 
 
 19
 It is true that the Commission, in the orders under review, attempted to distinguish Opinion 810 on the ground that Michigan Wisconsin was in curtailment in 1977, and even overruled Opinion 810 to the extent it is inconsistent with the orders.[15] But the Commission's attempt to distinguish Opinion 810 does not persuade us that Opinion 810 should not be read as a repudiation of the earlier adequacy-of-supply showings which the Commission here relies on. Indeed, the fact that Michigan Wisconsin was in curtailment in 1977 leads one to question the validity of the pre-1977 adequacy-of-supply showings. And it is not obvious why the Commission should think that, by overruling Opinion 810 in the instant case, in the year 1980, it could breathe new life into those earlier adequacy-of-supply showings.
 
 B.
 
 20
 FERC's second ground for denying GM's hearing request was that at the time each of the orders was issued the record[16] demonstrated that Michigan Wisconsin had not recently been in curtailment and would not be in curtailment during the following year[17] i. e., in the short term. In our view, this ground only permitted FERC to dispense with an evidentiary hearing concerning Michigan Wisconsin's short-term supply situation.[18] Insofar as GM sought an evidentiary hearing on the adequacy of Michigan Wisconsin's long-term supply situation, however, it seems entirely irrelevant that the Commission was able to conclude on the basis of the existing record that Michigan Wisconsin would not be in curtailment in the short term. Surely the Commission could not have meant to suggest that, since Michigan Wisconsin's supply situation is adequate in the short term, it must necessarily be adequate in the long term.[19]III
 
 
 21
 We cannot accept the reasons FERC offered in its orders for denying GM an evidentiary hearing on the issue of Michigan Wisconsin's long-term supply situation. We therefore remand this case to the Commission so that it may reconsider its decision not to conduct an evidentiary hearing on that issue. We remind the Commission, however, that it bears a weighty burden in justifying a denial of an evidentiary hearing.[20] In the event the Commission does conclude, upon reconsideration, that an evidentiary hearing on the issue of Michigan Wisconsin's long-term supply situation is unnecessary, it must articulate more clearly the reasons supporting that conclusion.
 
 
 22
 So ordered.
 
 
 
 [1]
 Abbreviated Application of Michigan Wisconsin Pipe Line Company for a Certificate of Public Convenience and Necessity, In the Matter of Michigan Wisconsin Pipe Line Co., Federal Energy Regulatory Commission (April 30, 1979), at 2, reprinted in Joint Appendix (JA) at 26
 
 
 [2]
 Id
 
 
 [3]
 Findings and Order After Statutory Hearings Issuing Certificate of Public Convenience and Necessity, Granting Petitions to Intervene, and Denying Requests for Formal Hearing, Michigan Wisconsin Pipe Line Co., Federal Energy Regulatory Commission (Nov. 1, 1979), reprinted in JA at 3-10 (hereinafter cited as "Order")
 
 
 [4]
 Order Denying Rehearing, Michigan Wisconsin Pipe Line Co., Federal Energy Regulatory Commission (May 14, 1980), reprinted in JA at 13-20
 
 
 [5]
 GM notes that under § 7(c) of the Natural Gas Act, before FERC may issue a certificate of public convenience and necessity, it "shall set the matter for hearing and shall give such reasonable notice of the hearing thereon to all interested persons as in its judgment may be necessary * * *." 15 U.S.C. § 717f(c) (1976). And GM also notes that FERC's regulations, while not specifying the nature of the hearing to be held, "admit of no exception to the requirement that some sort of hearing shall be held." Application of General Motors Corporation for Rehearing, In the Matter of Michigan Wisconsin Pipe Line Co., Federal Energy Regulatory Commission (Nov. 30, 1979), at 7, reprinted in JA at 256. Since FERC concedes that GM would be entitled to a formal evidentiary hearing on any disputed material issues of fact, see brief for respondent FERC at 14-18, we need not decide whether the requirement of a formal evidentiary hearing is one imposed by the Natural Gas Act or the Commission's regulations, or both
 
 
 [6]
 Petition for Leave to Intervene and Request for Formal Hearings of General Motors Corporation, In the Matter of Michigan Wisconsin Pipe Line Co., Federal Energy Regulatory Commission (June 4, 1979), at 2, reprinted in JA at 205
 General Motors does raise three other issues, which it conceded at oral argument are "subsidiary" to the principal one discussed in text: (1) what impact will the increased entitlements have on existing end users?; (2) is natural gas economically preferable to alternative fuels for high-priority end users?; and (3) what impact will the increased entitlements have on oil imports? Issue (1) is, in our view, subsumed in the principal issue concerning Michigan Wisconsin's supply situation, which we address in text. See also note 11 infra. As to issue (2), we agree with the Commission that no evidentiary hearing was required. The issue, presenting a matter of local public interest, is one that FERC, not improperly, has in the past left for resolution to state commissions. See, e. g., Blue Ridge Gas Co., 19 F.P.C. 1120 (1958). An evidentiary hearing was also unnecessary with respect to issue (3). As the Commission noted, the only material issue of fact raised by issue (3) is whether Michigan Wisconsin's supply of natural gas is sufficient for it to perform the proposed services. Since the adequacy-of-supply issue is separately raised, as GM's principal basis for a hearing, issue (3) did not require an evidentiary hearing.
 
 
 [7]
 The proposition is indeed well established law in this circuit. See Public Service Co. of New Hampshire v. FERC, 600 F.2d 944, 955 (D.C.Cir.1979); Citizens for Allegan County, Inc. v. FPC, 414 F.2d 1125, 1128 (D.C.Cir.1969). See also Independent Bankers Ass'n of Georgia v. Board of Gov. of Federal Reserve System, 516 F.2d 1206, 1270 (D.C.Cir.1975)
 
 
 [8]
 We note that in its first order FERC also suggested, as a basis for denying GM's hearing request, that the increase in peak day entitlements was de minimis. FERC did not, however, rely on this argument in its "Order Denying Rehearing," in its appellate brief, or in oral argument before this court. We therefore decline to reach it
 
 
 [9]
 FERC and the various intervenors also make the argument that GM lacks standing to challenge the Commission's orders since the petitioner has not demonstrated the likelihood of aggrievement. See 15 U.S.C. § 717r(b) (1976) (conferring standing to seek judicial review of FERC orders on parties "aggrieved" by the orders). In particular, they argue that any curtailment by Michigan Wisconsin of its customers would be based on annual entitlements, which remain unchanged by the Commission's orders, and that therefore the amount of natural gas GM would obtain under curtailment remains unaffected by the increase in peak day entitlements. In our view, however, GM has standing to challenge the Commission's orders. We do not accept the contention of FERC and the intervenors that GM's supply of natural gas during curtailment will necessarily be unaffected by the Commission's increase in peak day entitlements. See note 12 infra. Moreover, even if we assume that curtailment would be based solely on annual entitlements, it is nonetheless conceivable that the increased peak day entitlements, by permitting a faster depletion of Michigan Wisconsin's supply of natural gas, may result in curtailment at an earlier date than would otherwise occur, thereby injuring GM. The arguments of FERC and the intervenors simply do not demonstrate that GM's claims of adverse impact reduced gas supplies and increased prices are untenable. And while GM has not demonstrated that the adverse impact is reasonably likely to occur, the claimed injuries "must be taken as proven," insofar as the standing issue is concerned, "because proof was forestalled" through FERC's refusal to hold an evidentiary hearing. City of Pittsburgh v. FPC, 237 F.2d 741, 749 (D.C.Cir.1956)
 
 
 [10]
 The Commission stated:
 Contract demand standing alone has never been the focus for a gas supply determination in a certificate proceeding. Estimated annual gas requirements have been the pivotal factor. Insofar as annual gas requirements are concerned, if service under the existing certificates, with annual delivery limitations, is supported by the Commission's outstanding certificate authorizations and the policies and determinations reflected in Michigan Wisconsin's curtailment plan, then service under amended certificates, with the same annual delivery limitations, is supported by these authorizations and determinations. In short, no new gas supply showing is required in a certificate proceeding where, as here, annual deliveries are similarly limited both under the existing certificates and the amended certificates.
 Order Denying Rehearing, supra note 4, at 5, JA at 17 (emphasis added).
 
 
 [11]
 See Order, supra note 3, at 4, JA 6 ("Mich(igan) Wis(consin) did not curtail any of its customers during the winter of 1978-79 and does not anticipate any curtailments for the winter of 1979-80."); Order Denying Rehearing, supra note 4, at 4, JA at 16 ("Michigan Wisconsin has not been curtailing on a daily or seasonal basis and will not be curtailing on a daily or seasonal basis through March 31, 1981.")
 
 
 [12]
 As previously noted, see note 6 supra, subsumed in the broad question concerning the adequacy of Michigan Wisconsin's supply situation over the short and long terms is a subsidiary issue separately raised by GM, namely, the impact of the increased entitlements on existing end users. With respect to this sub-issue, FERC offered two additional reasons for denying GM an evidentiary hearing. First, the Commission stated that it may ignore whatever end-use impact may result from increased peak day entitlements. Second, it suggested that, in the event of curtailment, existing end users of Michigan Wisconsin's natural gas would not be affected since curtailment of natural gas among Michigan Wisconsin's distribution customers is based on annual entitlements, which remain unchanged by the Commission's orders. Neither of these additional reasons is necessarily persuasive. Contrary to what the Commission suggests, it is not clear that it can ignore the impact of its decision on existing end users. See State of North Carolina v. FERC, 584 F.2d 1003 (D.C.Cir.1978). Nor is it clear that curtailment of Michigan Wisconsin's distributors would be based solely on annual entitlements. Rather, it is the policy of the Commission to require natural gas companies to curtail on the basis of end-use priorities rather than contract entitlements. Order 467-B, Utilization and Conservation of Natural Resources Natural Gas Act, 49 F.P.C. 583 (March 2, 1973). See also State of North Carolina v. FERC, supra. And even if curtailment were based solely on annual entitlements, the existing end users of Michigan Wisconsin's natural gas might nevertheless be injured by the Commission's action in the instant case. Increased peak day entitlements may result in a faster depletion of Michigan Wisconsin's natural gas supplies, thereby necessitating institution of curtailment at a date earlier than would be required in the absence of increased peak day entitlements
 
 
 [13]
 Order Denying Rehearing, supra note 4, at 2-4, JA at 14-16
 
 
 [14]
 Indeed, in 1977 the Commission itself noted that its earlier approval of Michigan Wisconsin's annual entitlements "did not imply unfettered peak day or annual increases and that the Commission would continue to look closely at Michigan Wisconsin's supply in relation to its future proposals." Michigan Wisconsin Pipe Line Co., Federal Power Commission Opinion No. 810 (July 7, 1977), at 25
 
 
 [15]
 See Order, supra note 3, at 4, JA at 6; Order Denying Rehearing, supra note 4, at 2, JA at 14
 
 
 [16]
 Although no formal evidentiary hearing was held, the Commission, at an informal "hearing held on October 29, 1979 * * * received and made a part of the record in this proceedi(n)g all evidence, including the application and exhibits thereto, submitted in support of the authorization sought * * *." Order, supra note 3, at 6, JA at 8
 
 
 [17]
 See note 11 supra
 
 
 [18]
 Solely for the purpose of this opinion, we define the "short term" as that period of time extending, from the present, approximately one year into the future. As so defined, an evidentiary hearing was not necessary concerning Michigan Wisconsin's short-term supply situation since FERC was able to establish, without need for an evidentiary hearing, that at the time each of the orders under review was issued Michigan Wisconsin would not be likely to be in curtailment in the short term. See note 11 supra. Additionally, we note that the issue concerning Michigan Wisconsin's short-term supply situation is now moot inasmuch as Michigan Wisconsin did not curtail any of its customers from the time of FERC's first order through the date of this opinion, a period of approximately 19 months
 
 
 [19]
 Nor does FERC suggest in its orders, or make the argument in this court, that an applicant's long-term supply situation is an irrelevant consideration that never need be addressed by the Commission in granting certificates of public convenience and necessity under § 7(c) of the Natural Gas Act
 
 
 [20]
 See cases cited in note 7 supra. On the other hand, we point out that where a party requesting an evidentiary hearing merely offers allegations or speculations without an adequate proffer to support them, the Commission may properly disregard them. Whether this is in fact such a case is a question we leave to the Commission to consider on remand